**GORDON A. GUNDAKER REAL ESTATE COMPANY, INC., d/b/a Gundaker Realtors/Better Homes & Gardens, Plaintiff/Respondent,**

v.

**MISSOURI REAL ESTATE COMMISSION, Defendant/Appellant.**

**No. 64022.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jane A. Rackers, Asst. Atty. Gen., Jefferson City, for appellant.

Vatterott, Shaffar & Dolan, P.C., Frank J. Vatterott, St. Ann, for respondent.

KAROHL, Judge.

The Missouri Real Estate Commission appeals a trial court decision in a declaratory judgment action declaring the Gundaker Real Estate Company's "Ten G" sales incentive program not to be in violation of either § 339.100.2(12) or 4 CSR 250–8.070(5)(A), (B) and (C). On appeal, the Commission argues the trial court erred because this program: (1) uses prizes or money to induce agents to secure customers who may purchase, sell or

list property when the award of said prizes or money is contingent upon the purchase, sale or listing of the property, (2) is a lottery because the selling agents have a random chance to win a cash prize in exchange for their efforts to sell a participating home, and (3) uses prizes to influence purchasers or prospective purchasers of real estate. We affirm.

This case, which revolves around a real estate sales incentive program, presents us with pure issues of law. The agreed facts are as follows. Gundaker Realtors/Better Homes and Gardens (Gundaker) utilized a sales incentive promotion called the "Ten G" Program in 1990 and 1991. Owners of real estate listing their homes for sale with Gundaker were offered the option to participate in this program. If they wished, they would pay an additional sales commission in the amount of $250 after their property was successfully sold. The listing agreement would contain a description of the "Ten G" program and explain the additional commission. The $250 was placed by Gundaker into a special account. The funds in the account would accrue until 40 participating homes had been sold and the "Ten G" account balance was $10,000. The selling agents for each of the 40 pieces of property would be entered in a drawing with one entry for each sale. The account balance would be awarded to one agent whose entry was drawn at random. The entire process would then start again.

Participating properties were advertised by Gundaker as "Ten G" homes in the newspapers and the multi-list real estate book. For sale signs had a "Ten G" logo, indicating participation in the promotional incentive program. Gundaker sent a letter to all local real estate agents informing them of the program and their eligibility should they sell a "Ten G" home.

The "Ten G" program was intended to motivate agents and increase showings of the homes that participated in the program, thereby increasing the sales of Gundaker properties. Additionally, Gundaker used the program as a means to allow the average seller to compete with wealthy sellers who could, on their own, offer large cash bonuses to selling agents.

All of the "Ten G" homes were listed by Gundaker; therefore, Gundaker received some commission upon sale of a participating home, the same percentage of sale price were the property not in the program. No selling agent paid any money or furnished any other type of consideration to be eligible for the $10,000 drawing other than selling a "Ten G" piece of property. No selling agent forgave any entitlements flowing from successful sales. Additionally, no purchaser of a "Ten G" home was eligible to participate in nor received any money from the program.

On April 22, 1991, the Missouri Real Estate Commission (Commission) informed Gundaker's broker of record, George Bruns, of its determination the "Ten G" program violated both § 339.100.2(12), RSMo.1986 and 4 CSR 250–8.070(5)(A), (B), and (C). The Commission gave Gundaker the opportunity to discontinue operating the "Ten G" program without it taking any action against Gundaker's real estate license. Subsequently, Gundaker did discontinue the "Ten G" program. It retains the program's accumulated funds in an escrow account subject to this litigation.

Gundaker filed an action for declaratory judgment on May 21, 1991. The case was tried to the court on March 23, 1993; and on April 16, 1993, the court ruled against the Commission. The court's finding, judgment and decree declared the "Ten G" program was not a lottery as defined in Art. III, § 39(9) of the Missouri Constitution and violated neither § 339.100.2(12), RSMo 1986 nor 4 CSR 250–8.070(5). The Commission appeals.

 In a declaratory judgment action such as this, we will sustain the trial court's decree unless the court has erroneously declared or applied the law or the decree is not supported by substantial evidence or is against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), *Press–Journal Pub. Co. v. St. Peters Courier–Post*, 607 S.W.2d 453, 455 (Mo.App.1980). The issues to be determined in this appeal are questions of law, statutory interpretations. Therefore, we give no deference to the trial court's conclusions of law and inde-

pendently evaluate the statutory construction. *Bradley v. Mullenix,* 763 S.W.2d 272, 275 (Mo.App.1988).

The Commission argues on appeal that Gundaker's "Ten G" program violates § 339.-100.2(12), RSMo 1986 and 4 CSR 250–8.070(5) in three separate ways. The text of § 339.100.2(12) is as follows:

2. The commission may cause a complaint to be filed with the administrative hearing commission as provided by law when the commission believes there is a probability that a licensee has performed or attempted to perform any of the following acts:

(12) Using prizes, money, gifts or other valuable consideration as inducement to secure customers to purchase, lease, sell or list property when the awarding of such prizes.... is conditioned upon the purchase, lease, sale or listing; or soliciting, selling or offering for sale real property by offering free lots, or conducting lotteries or contests, or offering prizes for the purpose of influencing a purchaser or prospective purchaser of real property.

■ The Commission's first point on appeal argues Gundaker's "Ten G" program violates § 339.100.2(12) by "use(ing).... money to *induce agents to secure customers* to purchase, sell or list property when the awarding of the.... money is conditioned on the purchase, sale or listing of the property." (our emphasis) The Commission claims the statute's words "as inducement to secure customers" should be read to include inducements directed towards agents. We disagree.

The statute's plain words are ample indication the inducement which the statute prohibits is an inducement communicated directly to customers. The statute prohibits the use of prizes, money, gifts or other valuable consideration as a means to induce or influence customers. The type of inducement to which the statute refers is, for example, a selling agent offering free gifts, money or a chance to win a prize to persons who attend a meeting at which the broker offered property for sale. See, Op.Atty.Gen. No. 326, Leonard, 9–28–70. Here, neither the seller nor the buyer could receive a prize, money, gifts or other valuable consideration from the "Ten G" program. The only individuals who could possibly benefit from it were successful selling agents entered in the drawing without any payment or forfeiture of rights on their part.

In one of the few cases concerning § 339.-100.2(12), our supreme court provided an indication concerning its view of this statute and to whom the inducement must flow for the activity to be in violation. *Coldwell Banker Residential Real Estate Services, Inc. v. Missouri Real Estate Commission,* 712 S.W.2d 666 (Mo. banc 1986). The court speaks of the "customers who had received the benefit" of the inducements. *Id.* at 670. Additionally, it stated this statute may have been enacted to protect brokers who could lose business to other brokers who provide free gifts or inducements to customers contingent upon purchasing a piece of real estate. *Id.* at 668. This undue advantage, which would not be related to the efficiency of a broker's service, may force the smaller brokers out of business because they would not be able to afford to provide similar gifts or inducements. *Id.* The effects of this, in turn, may damage the health of the housing market. *Id.*

The Commission's proposed logic in the present case would prohibit real estate listing companies from offering any type of bonus or prize to selling agents, an activity the Commission has long approved, when the conditions are adequately disclosed to the home buyer. Gundaker's "Ten G" program is not in violation of § 339.100.2(12) because the inducement about which the Commission complains is not directed toward the customer, but toward the selling agent who gives nothing of value for an entry opportunity.

Also within Point I is the Commission's argument the "Ten G" program violates 4 CSR 250–8.070(5)(B), a regulation closely analogous to § 339.100.2(12). For the same reasons discussed, we find the "Ten G" program does not violate this regulation.

■ The Commission argues in Point II that Gundaker's "Ten G" program constitutes a lottery as defined within the Missouri Constitution and thus violates § 339.100.2(12) and 4 CSR 250–8.070(5)(A), (B) and (C). The

Missouri Constitution defines a lottery as, "games or contests whereby money or something of value is exchanged directly for the ticket or chance to participate in the game or contest." Mo. Const. Art. III, § 39(9) (amended 1978). Our supreme court has defined the elements of a lottery as: (1) consideration, (2) chance, and (3) prize. *Troy Harris v. The Missouri Gaming Commission,* 869 S.W.2d 58 (Mo.1993); *Mobil Oil Corp. v. Danforth,* 455 S.W.2d 505, 507 (Mo. banc 1970). Furthermore, § 572.010(7) RSMo Cum.Supp.1993 defines a lottery as an "unlawful gambling scheme in which *for a consideration* the participants are given an opportunity to win something of value, the award of which is determined by chance". (emphasis added) Consideration sufficient to support a contract is composed of: (1) a detriment to one party, or, (2) a benefit to the other party. *Moore v. Seabaugh,* 684 S.W.2d 492, 496 (Mo.App.1984).

Here, there is no direct exchange of the money or anything of value for the chance to win. The listing homeowner pays the additional commission of $250 and acquires no chance for the prize. It is only the selling agent who may participate in the drawing. The selling agent pays nothing to participate. In selling a "Ten G" home, the selling agent does no more than a selling agent must do for all listed properties, "Ten G" and not "Ten G," which is to use best efforts to find a buyer. The ultimate winner, the sales agent, pays nothing and gives up nothing to participate in the program. No consideration is exchanged, therefore no lottery exists.

■ In the Commission's final point on appeal, it argues the "Ten G" program offers a prize for the purpose of influencing a purchaser or prospective purchaser of real estate; therefore, it violates both § 339.100.-2(12) RSMo.1986 and 4 CSR 250–8.070(A), (B) and (C). The Commission claims the possibility of winning the drawing would influence selling agents who would, in turn, influence prospective purchasers in favor of a "Ten G" property. We find no merit in this argument for many of the same reasons as explained under Point I. Here, the "prize" was not intended to influence a purchaser, in the manner of a real estate agent offering a free prize to a potential customer to attend a meeting or a showing of a home, or upon purchase of a home. The purchaser pays the agreed price to the seller for any property and has no opportunity to participate in the drawing. Only selling agents participate and have the chance to win the $10,000.

Additionally, no evidence was presented establishing the "Ten G" program caused agents to breach a duty to use best efforts which is owed to any customer, whether or not a home is in the "Ten G" program. There is no evidence the program caused any form of coercion regarding customers.

Affirmed.

CRANE, P.J., concurs.

CRAHAN, J., dissents in separate opinion.

CRAHAN, Judge, dissenting.

I respectfully dissent. The majority effectively amends § 339.100.2(12) RSMo 1986 by adding a condition that the legislature did not see fit to add. The effect is to circumscribe the scope of the Commission's lawful authority to prevent practices it finds inimical to the best interests of those using the services of licensed real estate brokers.

My disagreement with the majority centers upon its construction of the following portion of § 339.100.2(12) specifying the practices real estate licensees are not to perform:

(12) Using prizes, money, gifts or other valuable consideration as inducement to secure customers to purchase, lease, sell or list property when the awarding of such prizes ... is conditioned upon the purchase, lease, sale or listing; ....

According these terms their plain and ordinary meaning, the "Ten G" program falls squarely within this proscription. Gundaker is using a "prize." Customers can obtain the benefit of the prize—*i.e.,* increased showings of the homes they are seeking to sell, only by listing their homes with Gundaker. The awarding of the prize is conditioned upon customers listing their home with Gundaker and electing to participate in the "Ten G" program. Thus, the "Ten G" program involves a licensee's (Gundaker's) use of a

"prize . . . as inducement to secure customers to . . . list property when the awarding of [the] prize . . . is conditioned upon the . . . listing."

The majority holds that the statute does not apply because the statute only prohibits inducements offered directly to customers. Nothing in the statutory language employed by the legislature indicates in any way that the inducement must be direct. The statute broadly proscribes the use of prizes as inducement, which presumably may be either direct or indirect. In this case, the offering of the prize is used as an inducement to customers to list their homes with Gundaker and participate in the "Ten G" program. It is not a *direct* inducement because the prize is not offered to the customers. However, it is offered to selling agents with the intent that the selling agents will be motivated to increase showings of "Ten G" homes. The potential for increased showings carries with it the prospect of a faster sale, which serves as an inducement for customers to list their homes with Gundaker. Thus, the inducement to list with Gundaker is indirect but is nonetheless an inducement.[1]

*Coldwell Banker Residential Real Estate Services, Inc. v. Missouri Real Estate Commission*, 712 S.W.2d 666 (Mo. banc 1986), does not purport to establish any requirement that the prohibited inducement be offered directly to customers. *Coldwell Banker* addressed the issue of whether the statutory prohibition against inducements was a suppression of commercial speech protected by the First Amendment. The court held that the statute prohibited conduct, in that case the use of coupons as inducements, not suppression of commercial speech. *Id.* at 670. Although the examples discussed by the court happened to involve *direct* inducements to home buyers, nothing in the court's opinion suggests that only direct inducements are proscribed.

The majority correctly observes that one possible purpose of the statute identified in *Coldwell Banker* was to protect smaller brokers who could lose business to larger brokers better able to offer inducements contingent upon the purchase of real estate. However, the court never suggested that this was the only purpose. The language of the statute is plainly broader than that, proscribing the use of consideration as inducements to secure customers to "purchase, lease, sell or list property." Further, the court in *Coldwell Banker* specifically acknowledged a broader purpose—*i.e.*, "a means of preserving the traditional methods of carrying on the real estate brokerage business." *Id.* at 668.

Even conceding the majority's premise that the purpose of the statute is to protect smaller brokers who might be driven out of business if they are unable to offer similar inducements, the need for such protection is precisely the same whether the inducement offered is direct or indirect. Under the "Ten G" program, it takes forty sales to accumulate sufficient cash to trigger the awarding of a prize. Large brokers such as Gundaker might have sufficient sales to trigger frequent drawings. Smaller brokers or individual brokers could take years to amass forty sales and thus be unable to offer the prospect of immediate reward. Potential customers desiring to list property for sale may perceive that they will be at a disadvantage if they fail to list their property with a broker able to offer equivalent incentives to selling agents.

On its face, the "Ten G" program only makes sense from the customer's perspective if the customer believes that participation in the program will, in fact, spur agents to work harder to sell their home than they would if the customer did not participate. The existence of the program also exerts pressure on customers who are choosing a listing broker because it suggests that customers will be at a disadvantage if they choose not to list with Gundaker or another broker offering a similar program. The Missouri Real Estate Commission, mainly comprised of experienced real estate brokers, is the body

---

1. The majority states that "[t]he only individuals who could possibly benefit from the ["Ten G"] program were successful selling agents. . . ." Op., p. 469. If the program did not also provide benefits or serve as an inducement to listing customers, they would have no reason to pay an additional $250.00.

charged with determining whether the "Ten G" program is consistent with "the traditional methods of carrying on the real estate brokerage business." The Commission could well conclude that the "Ten G" program has the effect of blackmailing customers to pay additional fees to secure brokers' and agents' best efforts to sell their homes and, as such, is inconsistent with traditional brokerage methods and contrary to consumers' best interests. As long as the proscribed practice falls within the plain language of the statute, we should not interfere. The statute contains no express requirements that prizes be offered directly to customers in order to constitute an improper inducement. In view of the remedial nature of the statute, no such requirement should be inferred.

I would reverse the judgment of the trial court.