**TRANSAMERICA INSURANCE COMPANY, Plaintiff/Respondent/Cross–Appellant,**

v.

**PENNSYLVANIA NATIONAL INSURANCE COMPANIES, Defendant/Appellant/Cross–Respondent.**

No. 67041.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 17, 1995.

Russell F. Watters, T. Michael Ward, Michael B. Maguire, Brown & James, St. Louis, for appellant.

Leo W. Nelsen, Mary M. Stewart, Holtkamp, Liese, Beckemeier, & Childress, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this court-tried declaratory judgment action, defendant Pennsylvania National Insurance Companies, formerly known as Pennsylvania Threshermen & Farmers Mutual Casualty Company, appeals the trial court's judgment favoring plaintiff Transamerica Insurance Company. Also, plaintiff cross-appeals arguing the trial court erred in not allowing pre-judgment interest on the damage award. We affirm.

The undisputed facts reveal that as of September 28, 1989, the date plaintiff filed the current action, 524 claims had been filed against General Gasket Corporation, formerly known as General Asbestos Gasket Manufacturing Corporation ("insured") alleging personal injury from exposure to asbestos products manufactured, sold or distributed by insured. Insured also has an ongoing potential legal liability for similar future claims. Pursuant to insurance policies issued by plaintiff, plaintiff has incurred $697,367.02 in defense costs [1] defending insured against these 524 claims.

---

1. As used in this opinion, the term defense costs includes litigation costs, settlements and judgments.

Plaintiff brought the instant action seeking a declaration that defendant provided product liability coverage to insured during the time all or some of these 524 claims arose. Insured maintained insurance coverage for twenty seven years. Plaintiff alleged insured received coverage from defendant for eleven, 1956 to 1967, of those twenty seven years. Thus, plaintiff sought indemnification plus interest from defendant for $^{11}\!/_{27}$ of the litigation costs plaintiff incurred while defending insured.[2] Plaintiff also sought a declaration that defendant has a continuing duty to defend insured in the ongoing asbestos litigation. Defendant denied ever issuing any insurance policies to insured. In the alternative, if such policies were issued, defendant denied that the policies included product liability coverage.

After hearing all the evidence, the trial court found that defendant had provided comprehensive general liability insurance to insured from 1956 to 1967 and such insurance included both product liability coverage and a duty to defend. The court, therefore, held that defendant was obligated to indemnify plaintiff for $^{11}\!/_{27}$ of the defense costs accrued as of September 28, 1989, while defending insured against the underlying personal injury claims. Furthermore, the court ordered defendant to pay a proportionate share of future defense costs or to participate in defending insured against future personal injury claims. However, the court denied recovery of pre-judgment interest because no contract or account existed between plaintiff and defendant and the sum owed was not liquidated.

No disputed errors of law are raised on appeal.[3] In its only point, defendant contends the trial court made two interrelated erroneous findings of fact. Defendant argues that the court had insufficient evidence to find either the existence or the terms of any insurance coverage allegedly issued by it to insured.

■ Both parties agree that had an insurance policy or series of insurance policies been issued from defendant to insured, then the insurance policy or policies have since been lost or destroyed. We assume without deciding that the party attempting to enforce a lost or destroyed insurance contract bears the burden of proving by clear and convincing evidence both the existence and the terms of the contract.[4] In a declaratory judgment action, such as this one, we will sustain the trial court's judgment unless it is not supported by substantial evidence or is against the weight of the evidence or the court has erroneously declared or applied the law. *Gordon A Gundaker Real Estate Com-*

2. Phoenix Insurance Company and its parent company Travelers Insurance Company were originally named as defendants in the present action. However, they were dismissed from the suit after agreeing to indemnify plaintiff for a pro rata share of plaintiff's defense costs and to participate in any future defense of insured under the terms of their insurance policies. They admitted providing product liability coverage to insured from 1967 to 1970.

3. Defendant, in its brief, implies that the trial court erroneously put the burden of proof as to the terms of the alleged insurance contract on defendant. In its findings however, the trial court stated defendant has "the burden of proof as to exclusions" within the insurance policy only after finding plaintiff had made its prima facie case that the insurance policies "contained products liability coverage". Furthermore, plaintiff admits having the burden of proving insurance coverage of insure by defendant. Therefore, no dispute exists as to this or any other question of law.

4. No Missouri court has established the standard of proof a plaintiff must meet at trial in order to prove the existence or terms of a lost insurance contract. We note that Missouri courts have utilized a clear and convincing standard for other lost written instruments. *Whitenton v. Whitenton*, 659 S.W.2d 542, 547 (Mo.App.1983) (prenuptial agreement which the Statute of Frauds, § 432.010, RSMo 1978, required be in writing); *Brunswick Corp. v. Briscoe*, 523 S.W.2d 115, 123 (Mo.App.1975) (promissory note); *State ex rel. Dryden v. Thym*, 282 S.W.2d 178, 187 (Mo.App. 1955) (deed for an interest in land). However, the Federal courts are split in lost insurance contract cases on whether to apply a clear and convincing standard or the less stringent preponderance of the evidence standard under the Federal Rules of Evidence. See *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 810 F.Supp. 1420 (D.Del.1992).

As discussed herein, we believe that sufficient evidence was presented by insurer for the trial court to find by clear and convincing evidence both the existence and terms of the lost insurance contract. Accordingly, we need not decide which standard is appropriate.

*pany, Inc. v. Missouri Real Estate Commission,* 878 S.W.2d 466, 468 (Mo.App.1994).

When reviewing findings of fact in a declaratory judgment action, we view the evidence and any concomitant reasonable inferences in the light most favorable to the prevailing party, disregarding evidence presented by the losing party unless it is favorable to the prevailing party. *Safeco Insurance Company of America v. Stone & Sons, Inc.,* 822 S.W.2d 565, 566 (Mo.App.1992); *Lockett v. Musterman,* 854 S.W.2d 831, 833 (Mo.App.1993).

Plaintiff admitted into evidence a 1955 "specimen form", 11 annual Insurance Service Corporation "line cards" and 11 annual "premium adjustment statements". Plaintiff also elicited the testimony of Edwin Rice, Wally Wang and Alvin Wolf.

Edwin Rice, defendant's Production Underwriter for Commercial Lines, testified the 1955 specimen form represented the standard comprehensive general liability forms used by defendant during the time period in question. Wally Wang, custodian of records for Insurance Services Office, Inc. ("ISO"), a corporation that created specimen forms for many insurance companies including defendant, testified the specimen form contained a duty to defend clause. The form itself expressly required insurer to pay all insured's legal obligated damage payments due to "bodily injury, sickness or disease, including death ... sustained by any person and caused by accident." Furthermore, the form, in its definitions section, states "products hazards" are "goods or products manufactured, sold or distributed by the named insured ... if the accident occurs after possession of such goods or products has been relinquished to others...."

ISC, the corporation that obtained insurance coverage for insured, was a subagent of defendant and was, thereby, authorized to bind defendant to an insurance contract. Line cards were documents created by ISC to record and identify the insurance policies ISC had placed for a client. Each line card

contained: (1) the policy number assigned by the insurer; (2) the company providing the insurance; (3) the limits of liability; (4) the premium; (5) the effective date and expiration date; and, (6) the general types of coverage provided. Alvin Wolf, office manager of ISC, stated that the 11 annual ISC line cards admitted into evidence cumulatively reflected that defendant issued annual insurance policies to insured from 1956 to 1967. Furthermore, he stated the policy numbers on each line card indicated that each policy was a comprehensive general liability insurance policy and that such policies included product liability coverage.

ISC received a "premium audit statement" in conjunction with each of insured's annual policies [5]; this statement bore the same policy number as did a corresponding ISC line card. Premium audit statements are generally documents created by the accounting department of an insurance company and sent to the policyholder. These documents state the premium amount for a specific insurance policy and other related information. ISC was able to locate only the premium audit statement corresponding to the last annual line card, the 1966–1967 line card. This statement had "Class Code 1067" written on it. Mr. Wolf testified Code 1067 designates product liability coverage. Mr. Rice also testified that these two documents, in conjunction, indicate that the final insurance policy may have included product liability coverage. Mr. Wolf stated that the other 10 annual policies included the same coverage; that "product liability coverage was something that was offered to and taken by [insured] during this entire period."

Although other contradictory testimony was presented, we must ignore it. The trier of fact has leave to believe or disbelieve all, part or none of the testimony of any witness. *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo.1984). The court's findings demonstrate that it found Mr. Wolf's testimony to be very convincing. We must defer to the trial court's findings because it is in a better position to judge both the credibility of wit-

---

5. All 11 ISC line cards were stamped with the notation "Final audit made". This notation was stamped on the line card after ISC had received a premium audit statement from defendant and had compared it to insured's records.

nesses and other trial intangibles that may not be completely revealed by the record. *Id.*

Finally, defendant argues that Mr. Wolf's testimony was uncorroborated. While we do not believe this to be true, even if it was, the testimony of a single witness, if accepted as true by the trier of fact, is sufficient to establish any fact. *Garren v. Smith,* 803 S.W.2d 184, 187 (Mo.App.1991).

We conclude the trial court's findings were supported by substantial evidence and plaintiff proved by clear and convincing evidence that defendant issued eleven annual insurance policies to insured. Plaintiff also produced clear and convincing evidence that all eleven policies contained both product liability coverage and a duty to defend clause. Defendant's sole point on appeal is denied.

In its sole point on cross-appeal, plaintiff argues the trial court misapplied the law when it did not allow prejudgment interest, pursuant to section 408.020, RSMo 1994, on defendant's pro rata share of defense costs. Section 408.020, RSMo 1994 permits the award of pre-judgment interest at a rate of nine percent per annum. The trial court held that section 408.020 does not apply because the amount owed by defendant was unliquidated and because no contractual relationship existed between the parties. It is not necessary that we reach either the question of liquidation or the question of contractual relationship because we are required to affirm the trial court's decision if it is supported by any grounds. *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851, 852 (Mo.1993); *Metropolitan Tickets, Inc. v. City of St. Louis,* 849 S.W.2d 52, 53 (Mo.App. 1993).

Section 408.020 allows creditors to receive pre-judgment interest on liquidated claims after demand for payment is made. *Whalen, Murphy, Reid, Danis, Garvin & Tobben v. Estate of Roberts,* 711 S.W.2d 587, 590 (Mo.App.1986). A demand for payment may be made any time after the debt becomes due. *Weekley v. Wallace,* 314 S.W.2d

256, 257 (Mo.App.1958). If a demand for payment was not made prior to filing of a lawsuit, then the filing itself constitutes a demand. *Id.* Although the demand need be in no certain form, it must be definite as to amount and time. *Id.*

Equitable principles of fairness and justice may guide the court when it is determining whether to allow pre-judgment interest. *Unlimited Equipment Lines, Inc. v. Graphic Arts Centre, Inc.,* 889 S.W.2d 926, 942 (Mo.App.1994). Generally, pre-judgment interest is not warranted when the debtor is unaware of the amount owed. *Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133, 160 (Mo.App.1992).

In the instant case, the insurance policy between defendant and insured did not specify an amount defendant was required to pay to defend insured from legal action. No demand for payment was made prior to filing suit. Furthermore, plaintiff, in its pleadings, merely stated that it had expended "more than $100,000" in defense costs. Neither the insurance policies nor the pleadings were definite as to amount and there was no evidence that defendant was aware of the amount owed until just prior to trial[6].

We hold that, under the circumstances of this equitable proceeding, the filing of the lawsuit by plaintiff did not constitute a sufficient demand in this case. The trial court ruled properly when it refused to allow recovery of pre-judgment interest. Plaintiff's sole point on cross-appeal is denied.

Judgment affirmed.

PUDLOWSKI and GRIMM, JJ., concur.

---

6. The first mention in the record of a more specific amount owed is in plaintiff's proposed findings of fact and conclusions of law. These proposed findings were mailed to defendant on November 22, 1993, more than four years after the suit was filed and just one week before the trial commenced.