Harvey Duane BARKER, Trustee under the Joint Revocable Trust Agreement of Harvey Duane Barker and Rose Marie Barker, dated December 15, 1993,

and

Paul G. Nahon, Sr., and Sharon A. Nahon, Husband and Wife, Farris Nahon, Jr., and Nancy Nahon, Husband and Wife, and Paul G. Nahon, Trustee under Paul G. Nahon Revocable Living Trust Agreement, dated December 4, 1969, Plaintiffs–Respondents,

v.

CITY OF SPRINGFIELD, Defendant–Appellant.

No. SD 31004.

Missouri Court of Appeals, Southern District, Division One.

Oct. 11, 2011.

Order Denying Rehearing and Remand Nov. 8, 2011.

Nancy Y. Yendes and Marianne Landers Banks, Assistant City Attorneys, Springfield, MO, for Appellant.

Patrick J. Platter, Neale & Newman, L.L.P., and James E. Miller, The Law Offices of James E. Miller, Springfield, MO, for Respondents.

GARY W. LYNCH, Judge.

■ The City of Springfield ("City") appeals a declaratory judgment in favor of Harvey Duane Barker, as Trustee under the Joint Revocable Trust Agreement of Harvey Duane Barker and Rose Marie Barker, dated December 15, 1993 (the "Barker Trust"); Paul G. Nahon, Sr., and Sharon Nahon, husband and wife; Farris Nahon, Jr., and Nancy Nahon, husband and wife; and Paul G. Nahon, as Trustee under Paul G. Nahon Revocable Living Trust Agreement, dated December 4, 1969 (the "Nahon Trust") (collectively "Property Owners"). The judgment declared that because Property Owners' two adjoining tracts of land were separate tracts at the time City first enacted its subdivision regulations, the regulations were not applicable to them. City contends that the trial court erred because two of the legal grounds expressed in the judgment—testamentary division and voluntary partition—were not supported by substantial evidence.[1] Finding that the third ground mentioned in the judgment—subdivision by definition—is supported by substantial evidence, we affirm.

*Factual and Procedural Background*

■ "When reviewing findings of fact in a declaratory judgment action, we view the evidence and any concomitant reasonable inferences in the light most favorable to the prevailing party, disregarding evidence presented by the losing party unless it is favorable to the prevailing party" *Transamerica Ins. Co. v. Pennsylvania Nat'l Ins. Cos.*, 908 S.W.2d 173, 175 (Mo.App. 1995). In that light, the following facts were adduced.

Lewis and Mary Luster, as husband and wife, owned a parcel of real estate at the northeast corner of St. Louis Street and Kickapoo Street. On May 14, 1948, Lewis and Mary Luster executed their individual Last Wills and Testaments, both of which included the following provision:

> I own or have an interest in several pieces of real estate. In most cases, my [spouse] and I each own an undivided one-half interest and it is planned eventually by our respective wills when both of us are deceased, that the same trustee or trustees will hold both trust estates. The net income from rented property at this time is very satisfactory and the income is now better than from any other available investment and I suggest that the trustee or trustees retain these properties in the estate as long as the income therefrom produces a fair return. I do not make any positive restrictions against the sale of real estate production income because conditions may arise where it will become

---

1. In its second point relied on, City claims that the judgment is against the weight of the evidence in that there was "no evidence" to support either ground stated in the judgment. An against-the-weight-of-the-evidence argument, however, "presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact." *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo.App.2010). A claim that there was "no evidence" to support the judgment is a claim that the judgment is not supported by substantial evidence, not that it is against the weight of the evidence.

advisable to dispose of at least one or more of the properties.

Lewis Luster died sometime between the execution of his Last Will and Testament and November 1948. On November 16, 1948, Mary Luster, as Executrix of Lewis Luster's estate, filed an "Inventory and Appraisement for the Estate of Lewis." In Exhibit A of that document, Mary Luster included the following legal description:

An undivided one-half interest in property described as beginning at the Northeast corner of the intersection of St. Louis Street and Kickapoo Avenue, formerly Willard Street, running thence East along the North line of St. Louis Street, 315.5 feet more or less to the West Line of the right of way of the Chadwick Branch of the St. Louis and San Francisco Railway Company, thence in a Northwesterly direction along the West line of said right of way to the point where the West line of said right of way of said railway Company intersects with the East line of said Kickapoo Avenue thence South along the East line of Kickapoo Avenue to the point of beginning, including all the improvements on said property belonging to the grantors, said one-half interest being appraised at $9,000.00.

On November 17, 1948, Mary Luster filed an "Affidavit to Demand Against the Estate," which stated,

Claimant states that the above estate is indebted to her on account of rents collected on properties owned by deceased and this claimant, each owning an undivided one-half interest, in the amount of $1,664.70, as shown by the attached statement. Claimant states that it has been the custom in the past for the deceased to collect the rent on the said properties and pay for all repairs and taxes on the property and also pay the income taxes of the claimant and at the end of the year make an accounting with her and pay her the balance due her; that this claim represents the net amount due her for the year 1948 up to the date of the death of decedent. Therefore claimant prays the court to allow her said claim against the above estate in the amount of $1,664.70.

Mary Luster also listed rents received from "1301 St. Louis Street" and "1313 St. Louis Street[,]" both of which were encompassed in the above legal description. Annual settlements filed for the years 1948 through 1951 continued to list rents received from each of these addresses. The "Final Settlement" for Lewis Luster's estate was entered by the Probate Division of the Circuit Court of Greene County in 1951.

During the pendency of Lewis Luster's estate in probate, Herman Lumber Company paid rent to Mary Luster for 1301 St. Louis Street, and Roy Scrivner paid rent for 1313 St. Louis Street. The former ran a lumberyard while the latter operated the Fisher Hi–Boy Drive In.

On March 26, 1956, City enacted by ordinance its subdivision regulations, which went into effect 20 days later. Section 6 of the regulations, entitled "Application of Regulations," provided, "No person shall subdivide a tract of land which is located within the City except in conformity with the provisions of this ordinance." Subsection (1) defined "subdivision" as

the division of a parcel of land into two (2) or more lots or parcels for the purpose of transfer of ownership or building development, or, if a new street is involved, any division of a parcel of land; provided that division of land which may be ordered or approved by a court or effected by testamentary or intestate provisions, or a division of land into lots or parcels of five (5) acres or more and

not involving a new street or easements of access shall not be deemed a subdivision. The term includes resubdivision and when appropriate to the context, shall relate to the process of subdividing or to the land subdivided.

The subdivision regulations further required that all plats of subdivisions be recorded in the county recorder's office and proscribed the sale or transfer of any land located within a subdivision unless that subdivision has been approved and so recorded.

Mary Luster died on January 22, 1980. The Probate Division of the Circuit Court of Greene County approved a final settlement and ordered distribution of her estate on April 26, 1983. The Order of Distribution included Mary Luster's undivided one-half interest in the parcels at issue with separate tax descriptions, names for each of the separate tracts, and a different lessee for each tract at 1301 and 1313 St. Louis Street.

On June 13, 1990, Boatmen's National Bank, Nancy Farthing, and Ruth Amis Hulston—trustees of the Last Wills and Testaments of Lewis and Mary Luster— conveyed each estate's undivided one-half interest in 1313 St. Louis Street to Timothy and Barbara Murphy. On May 13, 1992, Barbara Murphy conveyed her interest in the property to Timothy Murphy who, in turn, conveyed his interest in the property (the "Nahon Tract") to Paul G. Nahon, Sr., and Sharon A. Nahon, Farris Nahon, Jr., and Nancy Nahon, and Paul G. Nahon as trustee of the Nahon Trust. This last conveyance occurred on March 19, 1993.

On July 12, 1990, Boatmen's National Bank, Nancy Farthing, and Ruth Amis Hulston—again, as trustees of the Last Wills and Testaments of Lewis and Mary Luster—conveyed each estate's undivided one-half interest in 1301 St. Louis Street to Harvey Duane Barker and Rose Marie Barker. The Barkers subsequently conveyed the property by General Warranty Deed to the Barker Trust on December 18, 1993. Shortly after purchasing the property in 1990, Mr. Barker applied for a building permit from City. He was granted the permit but was not informed that the lot was allegedly in violation of City's subdivision regulations. Regulations in effect at that time, however, did not require City to review the legal description of a parcel of land before issuing a building permit.

Barker, as trustee of the Barker Trust, sold 1301 St. Louis Street (the "Barker Tract") to Joplin Building Material Company on April 1, 2006. Shortly thereafter, an architectural firm, on behalf of Joplin Building Material Company, requested that City review its proposal for redevelopment of the site. A review of City's records revealed no registered property line separating 1301 and 1313 St. Louis Street, although the Greene County Assessor's map did identify the two tracts as separate, and City's zoning records also identified the two tracts as separate.[2] City then denied the proposed redevelopment of the site without Joplin Building Material Company first creating a legal lot through a major subdivision of the parcel.

Barker and Paul Nahon attended a meeting with City to discuss what it required in order to redevelop the site. Barker was told that the sale of 1301 St. Louis Street was illegal. He was also told that, unless the property was properly subdivided according to City's regulations, a permit would not be issued, and the

2. The Greene County Assessor's map was not in the City's own files, but was available as a public record.

requested redevelopment would not be allowed.

On June 29, 2006, City sent a letter to Barker's attorney stating that City would not administratively certify the subdivision and that a major subdivision would have to be undertaken if Barker wanted to go through with the sale of the property. The letter further stated that, in order for City to administratively subdivide the property, it required either a warranty deed dated prior to March 26, 1956, or some other evidence that the property was lawfully subdivided after that date. The letter then described what would be necessary for compliance with the current subdivision regulations, which included a dedicated right-of-way, construction of any necessary sidewalks, limitation of access, and compliance with any applicable stormwater requirements. The only other alternative would be for Barker to present the property as a one-lot subdivision for review by the Planning and Zoning Commission; such a plat would also have to be approved by City Council. Barker never applied to subdivide the property.

Property Owners filed this action for declaratory judgment asking for a determination that City's subdivision regulations do not apply to the division of real estate into 1301 and 1313 St. Louis Street as separate tracts. Property Owners alleged that Lewis and Mary Luster had always treated the parcel as two separate properties and that a division of the parcel had occurred, therefore, prior to Lewis Luster's death in 1948; they alleged, in the alternative, that a division occurred as a result of a testamentary subdivision via the Lusters' Last Wills and Testaments.

Following trial, the trial court entered its judgment finding that the tracts at issue "were separate tracts, parcels[,] or lots of record before enactment of the subdivision regulations promulgated by the City of Springfield on March 26, 1956." The trial court specified that Lewis and Mary Luster had divided the property prior to Lewis's death, pointing to the Lusters' wills and Mary Luster's affidavit as proof of such a division. The trial court also found that the Lusters had "effected a voluntary partition of these two properties before 1956." Finally, the trial court expressly found that Property Owners were not required to exhaust any further administrative remedy because none of the regulations offered by City specified any such administrative remedy. This appeal followed.

### Standard of Review

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001). We will, therefore, affirm the trial court's decision "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.*; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review all evidence and reasonable inferences that can be drawn therefrom in the light most favorable to the prevailing party and ignore all evidence and inferences to the contrary. *Transamerica Ins. Co.*, 908 S.W.2d at 175.[3]

3. Rule 73.01(c) of the Missouri Court Rules (2011) states,

  If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

  The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the

## Discussion

City raises three points. Our disposition of its second point is dispositive and renders the remaining two points moot.

■ In its second point relied on, City contends that there was no evidence supporting the trial court's findings in the judgment that it was the Lusters' testamentary intent to treat the two parcels of land as separate or that the Lusters voluntarily partitioned the property into two tracts prior to Lewis Luster's death in 1948. We need not reach the merits of City's claim on either issue, however, because the trial court's judgment was correct on another ground stated in the judgment and not challenged by City in this appeal. *See Safeco Ins. Co. of America v. Stone & Sons, Inc.,* 822 S.W.2d 565, 567 (Mo.App.1992) (stating that the trial court's judgment "should be affirmed if correct on any reasonable theory supported by the evidence").

In their responding brief, Property Owners asserted and argued that the Barker Tract and the Nahon Tract were part of an existing subdivision when the 1956 subdivision ordinance was enacted because the parcel of land comprising both tracts satisfied the definition of "subdivision" as defined in that ordinance and as found by the trial court in its judgment.[4] Having already been subdivided, Property Owners argue, the 1956 subdivision regulation did not apply to their tracts. We agree.

■ As a general rule, municipal ordinances only operate prospectively. *Flem-*

*ing v. Moore Bros. Realty Co.,* 363 Mo. 305, 316, 251 S.W.2d 8, 16 (1952). This prospective application is reflected in Section 6 of City's 1956 subdivision ordinance, entitled "Application of Regulations," which states, "No person *shall* subdivide a tract of land which is located within the City except in conformity with the provisions of this ordinance." (Emphasis added). Therefore, this ordinance regulated subdivisions in City created after its enactment but was not applicable to subdivisions in existence when enacted. City does not claim otherwise.

In its 1956 subdivision ordinance, City defined a subdivision as

... the division of a parcel of land into two (2) or more lots or parcels for the purpose of transfer of ownership *or building development,* or, if a new street is involved, any division of a parcel of land; provided that a division of land which may be ordered or approved by a court or effected by testamentary or intestate provisions, or a division of land for agricultural purposes into lots or parcels of five (5) acres or more and not involving a new street shall not be deemed a subdivision. The term includes resubdivision and, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided.

(Emphasis added). Nothing in the ordinance defines an existing subdivision differently. Thus, "the division of a parcel of land into two (2) or more lots or parcels for the purpose of ... building development," was a subdivision by definition, re-

---

party. Any request for the opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

No Rule 73.01(c) request was made by any party in this case.

4. City did not address this argument in their reply brief, nor did they address this topic at oral argument, even when it was broached by Property Owners.

gardless of when it was created. City's Director of Planning and Development testified that according to this definition a deed transfer was not necessarily required to create a subdivision before 1956.

In accordance with this definition, the Lusters had already created a two-lot subdivision of the parcel at issue before City enacted the subdivision ordinance. Substantial evidence was presented at trial that in 1956, the Lusters had already divided the parcel into two lots to develop and build two separate—and very different—businesses: a lumberyard on the Barker tract and a drive-in restaurant on the Nahon tract. These actions by the Lusters satisfy City's definition of a subdivision, as provided in its 1956 subdivision ordinance.

Because the tracts at issue were part of an existing subdivision, the trial court did not err in holding that the subsequently enacted subdivision regulations do not apply to Property Owners' tracts. City's second point is denied.

City's first and third points allege that Property Owners failed to exhaust their administrative remedies under City's subdivision regulations and are premised upon the applicability of the subdivision regulations in the first instance. Given our denial of City's second point because the subdivision regulations are not applicable to Property Owners' tracts, these points are moot.

### Decision

The trial court's judgment is affirmed.

BARNEY, J., and SCOTT, J., concur.

## ON APPELLANT'S MOTION FOR REHEARING OR, IN THE ALTERNATIVE, MOTION FOR REMAND

PER CURIAM.

After the issuance of this Court's opinion, City timely filed a Motion for Rehearing or, in the Alternative, Motion for Remand. In it, City now claims that the trial court's legal conclusion in its judgment that the Barker Track and the Nahon Track were separate tracts, parcels, or lots before the enactment of City's subdivision regulations in 1956 violates the provisions of sections 137.185 and 442.380. Nothing in the record supports that City raised the issue of the applicability of either statute in the trial court or in its brief on appeal as required by Rule 84.13 of the Missouri Court Rules (2011). "Issues raised for the first time in a motion for rehearing will not be considered." *Kinzenbaw v. Dir. of Revenue*, 62 S.W.3d 49, 54 n. 9 (Mo. banc 2001); *see Whitaker v. City of Springfield*, 889 S.W.2d 869, 874 (Mo.App.1994); *Masonic Temple Ass'n of St. Louis v. Farrar*, 422 S.W.2d 95, 113 (Mo.App.1967). City's Motion for Rehearing or, in the Alternative, Motion for Remand is denied.