**Napoleon & Marguerite BRADLEY, et al., Plaintiffs–Appellants,**

v.

**Ivan L. MULLENIX d/b/a Mullenix Development Company, Defendant–Respondent.**

No. 53781.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 1988.

Application to Transfer Denied Feb. 14, 1989.

273

Alan G. Kimbrell, St. Louis, for plaintiffs-appellants.

Donald W. Paule, St. Louis, for defendant-respondent.

CARL R. GAERTNER, Judge.

Plaintiffs, as representatives of a class consisting of the purchasers of units in Summerwood Condominiums, filed this action against defendant, Ivan Mullenix, as the developer of the condominium project

and in his capacity as manager of the Condominium Association. After a non-jury trial, the court found against plaintiffs. On appeal plaintiffs assert the trial court erred in finding every unit owner had been reasonably assessed his or her proportionate share of the expenses of administration, maintenance and repair of common elements, and in denying recovery of a sum paid by each purchaser at closing for survey costs. We affirm in part and reverse and remand in part.

On September 7, 1979 defendant owned a parcel of real estate in St. Louis County. On that date he recorded certain declarations submitting the property to the provisions of the Condominium Property Act, §§ 448.005 to 448.210, RSMo. 1986. Two documents were recorded: A declaration of Covenants, Conditions and Restrictions for Commons of Summerwood (Declaration of Commons) and a Declaration of Condominium Bylaws and Indentures (Declaration of Condominium). The original Declaration of Condominium provided for four buildings containing a total of 41 units. Amendments were made from time to time as the development progressed for additional buildings and units, reaching a total of 132 units in 11 buildings as of November 16, 1983. The Declaration of Condominium defines "common elements" as "all portions of the property except the units" and further provides:

Section 3.2: INTEREST IN COMMON ELEMENTS: The percentage of interest in each owner in the Common Elements is shown in *Exhibit C* hereto attached and each units owner shall bear the same proportionate share of expense and administration as the percentages shown bears to 100.

Exhibit C contained a list of the proposed units together with the percentage of interest in the common elements of the complex allocated to each unit. As amendments were filed adding additional buildings and units to the complex, the percentages set forth in Exhibit C were correspondingly amended. The Declaration also provided for a Board of Managers (originally and at all times pertinent to this case the developer, defendant herein, constituted and exer-

cised the powers of the Board of Managers) to make annual estimates of cost and expenses for the ensuing calendar year and to assess each unit owner a percentage thereof equal to his percentage of ownership of the common elements, to be paid in 12 monthly installments.

The Declaration of Commons, filed simultaneously with the Condominium Declaration purported to apply to a part of the real property designated for development as a condominium complex. According to defendant's testimony and his appellate brief the

Declaration of Commons "provided for certain amenities such as a clubhouse, swimming pool and tennis courts which would be available to all residents and to provide for the care and maintenance of these amenities together with the care and maintenance of overall common property such as streets throughout the complex, as contrasted with the maintenance of 'common elements' within a building such as exterior walls, roof, hallways etc ..., which were governed by the Declaration of Condominium."

Administration of the "commons" was vested in trustees, defendant, his wife, and two employees, empowered to estimate cost and expenses for the coming year and to levy assessments to be paid as a part of the condominium assessments. However, the Declaration of Commons provided for assessments to be fixed at a uniform rate for all units, except uncompleted units were totally exempt from assessment and completed but unsold units were assessed at 25 percent of the rate paid by individual owners.

The evidence showed that a single annual assessment was levied against each unit owner for estimated expenses for "common elements" and for "commons" and the funds received through monthly payments were commingled in a bank account maintained by defendant under the name "Summerwood Associates" from which both types of expenses were paid. The evidence disclosed two continuing deviations from the formula set forth in these Declarations. Defendant paid the full uniform assess-

ment for "commons" for units completed but unsold, rather than the 25 percent provided for in the Declaration of Commons. Assessments for "common element" expenses were determined not by the percentage of individual unit owner's interest in the common elements as set forth in Exhibit C, but on the basis of the percentage of interest of owners of completed units. Because all 41 units listed on Exhibit C, and all of those listed on subsequent amendments to Exhibit C, were not completed when assessments were levied, the percentage of expenses charged to each completed unit was larger than the percentage assigned to these units on Exhibit C. Plaintiffs seek to recover what they claim to be overcharges paid by them because of this larger percentage rate and to recover damages for the failure of defendant to pay any portion of the expenses allocated by percentages on Exhibit C to uncompleted units owned by him.

 The trial court held that the method of assessing unit owners was "fair and reasonable" and found that " 'unit' for purposes of Chapter 448 and the Declaration of Condominium and Declaration of Commons is not a 'unit' until it has been completed and is capable of occupancy." Interpretation of clear language of a contract is a question of law. *Cal Caulfield & Company v. City of Belton,* 687 S.W.2d 207, 209 (Mo.App.1984). Similarly, the construction of a statute is a matter of law, not a matter of discretion. *State ex rel. Igoe v. Bradford,* 611 S.W.2d 343, 350 (Mo. App.1980). On appellate review we give deference to the findings of fact in a judge tried case but we make an independent evaluation of the conclusions of law the trial court draws from its factual findings and from the admitted facts. *Clark County Sales Company v. Hester,* 732 S.W.2d 569, 572 (Mo.App.1987). We find inescapable the conclusion that the procedure adopted by defendant for the levying of assessments against unit owners for their proportionate share of common elements expenses fails to comply with the requirements of the Condominium Property Act and with the clear provisions of the Declaration of Condominium.

Section 448.030.1(3) requires that a Declaration include a statement showing the percentage of ownership interest in the common elements allocated to each unit. Section 3.2 of the Declaration of Condominium complied with the statute by reference to the attached Exhibit C. Section 448.-010(1) defines "common elements" as all portions of the property except the units. Section 1.1 of the Declaration of Condominium contains a similar definition and § 3.1 thereof similarly delineates "common elements", although in much greater detail. Section 448.080.1 limits each unit owner's proportionate share of the expenses of administration, maintenance and repair of common elements to the same ratio as his percentage of ownership in the common elements as set forth in the Declaration. The Declaration of Condominium contains a similar provision limiting each unit owner's share of common element expense to the percentage shown on Exhibit C and further provides in § 7.2(a) for annual assessments according to each unit owner's percentage of ownership in the common elements. However, defendant admits the percentages shown on Exhibit C were never used to determine each unit owner's proportionate share of the common element expenses. Rather, a different set of percentages was calculated based upon the number of completed units. The effect of excluding the units listed on Exhibit C which had not been completed from this calculation caused a larger percentage of expenses to be assessed against the owner of each completed unit. Defendant's failure to pay the assessed percentage of expenses, except for certain insurance costs, for each uncompleted unit listed on Exhibit C which he owned cast a larger burden upon the owners of the completed units.

Defendant argues that the conclusion of the trial court, that a "unit" is not a "unit" until completed and capable of occupancy, is proper as it would be unreasonable to assess maintenance, repair and administrative expenses against units which were under construction. We reject this conclusion and defendant's reasoning. Whether a building contains one complete and occu-

pied unit and nine incomplete units or vice versa the grass on the lawn grows to the same length, the snow on the sidewalk accumulates to the same depth, the roof and exterior paint deteriorate at the same rate. Defendant inferentially concedes this issue by recognizing his responsibility to pay a proportionate share of the cost of building insurance as soon as one unit in each building was sold and occupied.

Moreover, the trial court's definition of "unit" as limited to those completed and capable of occupancy materially deviates from the definition contained in the statute and in the Declaration of Condominium. Both define "unit" as meaning a part of the property designed and intended for independent use and having lawful access to a public way. Both refer to the designation of units on a plat required to be recorded simultaneously with the Declaration. Both assign ownership interest in the common elements and proportionate share of common element expense on the basis of the percentage of each unit to the total units listed in the Declaration. Neither the statute nor the Condominium Declaration makes any distinction between completed and unfinished units. The statutory definition of "unit", § 448.010(10), and the limitation of proportionate share of expenses to the recorded percentages set forth in the Declaration, § 448.080.1, are clear and unambiguous. It is inappropriate for a court to add provisions to a statute under the guise of construction unless such provisions are plainly written or necessarily implied. *Missouri Public Service Company v. Platte–Clay Electric Coop.*, 407 S.W.2d 883, 891 (Mo.1966); *Wilkinson v. Brune*, 682 S.W.2d 107, 111 (Mo.App.1984). Additionally, in analyzing the assessment plan detailed in the Declaration of Condominium, we are guided by the rules that all Declaration of Condominium "should be strictly construed to assure investors that

what the buyer sees the buyer gets." 31 C.J.S. *Estates* § 148; (Supp.1988) *Sterling Village Condominium, Inc., v. Breitenbach*, 251 So.2d 685, 688 (Fla.App.1981), and that "equity cannot aid in effecting what ought to have been done in contravention of the Declaration". *Stuewe v. Lauletta*, 93 Ill.App.3d 1029, 49 Ill.Dec. 494, 497, 418 N.E.2d 138, 141 (1981). Thus, despite defendant's argument that final ownership percentages produce an inequitable allocation of expenses during the development stage of a condominium project neither the applicable statute nor the Declaration of Condominium provides for this interim phase.[1] Instead, they plainly state each owner shall be charged the percentages set forth in the Declaration. Defendant's failure to use these percentages contravened the statute and breached the Declaration of Condominium. The trial court's interpretation of the statute and approval of defendant's departure from the statutory and contractual requirements for assessment of the proportionate share of expenses constitutes an erroneous declaration and application of the law and must be reversed. *Beatty v. Metro St. Louis Sewer Dist.*, 731 S.W.2d 318, 319 (Mo.App.1987).

We are not unmindful of defendant's argument that plaintiffs suffered no damage because defendant absorbed as construction costs many of the expenses which could have been assessed against unit owners of cost of administration and maintenance. Defendant testified generally to such a conclusion. However, there was no testimony establishing a specific comparison between such amounts absorbed by defendant and the difference between the sums paid by plaintiffs and what they should have paid if properly assessed. We are neither capable nor inclined to undertake a detailed analysis of the various

---

1. The Uniform Condominium Act §§ 448.1–101 to 448.4–120 RSMo. 1986, applicable to condominiums created after September 28, 1983, does make such provisions and also restricts the developer's ability to include in a declaration or amendment to a declaration units which are not substantially completed. Although no such restriction is contained in the prior Condominium Property Act, §§ 448.005 to 448.210, applicable to the instant case, the developer nevertheless controlled the timing of the listing of units in the declaration or amendments and could thereby protect against liability for a proportionate share of common element expense assessed against unsold units under construction.

working papers and accounting records introduced as exhibits in an attempt to find support for defendant's argument. We do not intend to preclude further assertion of this contention on rehearing; we simply find the record presented to us insufficient to permit a determination of the merits thereof.[2]

█ Because this matter must be remanded, we address another issue not raised by the parties but which is in need of clarification on the basis of the record before us. As we have noted, in defendant's testimony a distinction is made between "common elements" and "commons". He testified the former were the elements appurtenant to the buildings and the latter were the streets, swimming pool, and tennis courts. In the Declaration of Condominium, streets, swimming pools, parks and recreation areas are expressly included as "common elements." The Declaration of Commons defines "commons" as "all streets, roads, lanes, paths, parkways, common property and easements therefor ... as set forth in [recorded] easement plats." We have not been furnished with any plats nor can we determine from the record presented to us whether the area described as "commons" is within or without the parcel dedicated to the condominium project. If the "commons" area is within and a part of the Condominium area, the expense assessment at a uniform rate against unit owners excluding uncompleted units and assessing completed but unsold units at a lesser rate would run afoul of § 448.080. If the "commons" area is not within, but merely contiguous to the condominium parcel, then the method of assessment represents a legal contractual arrangement for the payment by the unit owners of a fee for the use of certain easements in land retained by the developer. We trust clarification of this matter will be forthcoming so that appropriate rates of assessment may be determined.

Plaintiffs' final point on appeal relates to a one-time charge of $150 assessed against each purchaser of a unit for survey costs. Section 448.040 requires the recording together with the Declaration of Condominium of a plat prepared by a registered surveyor showing the boundaries, measurements, dimensions, location and elevation of the parcel, buildings, and units of the condominium project. In order to recover the expense of this survey defendant charged each unit purchaser $150 at the time of closing. The trial court found this to be a proper charge and the evidence supported his finding that the actual cost of the survey exceeded $150 per unit. Plaintiffs contend that this cost, as well as other costs of development and construction, should form an element of the purchase price of the unit. They argue that by including in the sales contract under the heading "closing" a provision requiring the purchaser to "pay survey and all closing costs" defendant misled purchasers into believing that survey costs would be based upon a unit survey in connection with the closing of the sale, whereas only a part of the $150 was allocable to locating each unit within a building.

█ No unit owner testified to being misled nor did plaintiffs present any evidence to dispute the testimony of an experienced condominium developer called by defendant who testified this procedure was the usual and customary manner of recoupment of overall survey expenses. We find no error in the trial court's conclusion that the provision of the sale contract requiring the purchaser to pay survey costs was not breached by charging a pro-rata share of the costs of the three dimensional plat filed for recording.

Accordingly, the judgment of the trial court on Count XII of plaintiffs' petition, the survey cost, is affirmed. The judgment on Count II, the assessment of expenses of administration, maintenance, and repair, is reversed and remanded for further proceedings in accordance with this opinion. The other Counts of plaintiffs' petition

---

**2.** Plaintiffs have filed a 16 page appendix to their brief which purports to show the overcharge assessed against each unit owner for each month. Since this was not presented to the trial court it is not a part of the Record on Appeal and we may not consider it.

**278**

have been dismissed in the trial court or abandoned on appeal.

SATZ and SMITH, JJ., concur.