180 Ariz. 216 (1994)
883 P.2d 453
MOUNTAIN VIEW CONDOMINIUMS HOMEOWNERS ASSOCIATION, INC., dba Arbor Point Condominiums, an Arizona nonprofit corporation, Plaintiff/Appellant,
v.
Clifford J. SCOTT and Valerie Scott, husband and wife; Lawyers Title of Arizona, as Trustee under Trust No. 7518-T; Douglas R. Knoles, a married man as his sole and separate property; Superstition Homes, an Arizona corporation; Inca Investment, Inc., an Arizona corporation, Defendants/Appellees.
No. 2 CA-CV 93-0288.
Court of Appeals of Arizona, Division 2, Department A.
August 25, 1994.
*217 Tanis A. Duncan, Tucson, for plaintiff/appellant.
Dan L. Dudley, Tucson, for defendants/appellees.
OPINION
LACAGNINA, Judge.
In this appeal we must decide whether the unit owner of a condominium is obligated to pay assessments to the homeowners' association if the construction of improvements on the individual unit has not occurred. We hold that because unit ownership includes a vested, undivided interest in the common elements, the obligation to pay assessments arises from unit ownership and is not dependent upon completion of improvements. We therefore reverse the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Mountain View Condominiums is a condominium complex created in 1984 under the Horizontal Property Regime Act, former A.R.S. §§ 33-551 to 33-561,[1] when the Declaration of Covenants, Conditions and Restrictions (Declaration) was recorded and the plat was filed. Legal title was vested in Lawyers Title of Arizona, the Declarant[2], as trustee under Trust 7518-T. Lawyers Title recorded a plat subdividing the land into 76 units and common elements (referred to in the condominium documents as "Common Areas") A, B, C, and D. Although beneficial interest was initially vested in Roger Mountain Limited Partnership, following foreclosure by Security Savings on October 31, 1991, Security Savings deeded that interest to C.J. Scott. On April 21, 1993, Scott and Lawyers Title deeded their interests in Units 22-76 of the Mountain View Condominiums to Inca Investment, Inc. (Units 22-68), Douglas R. Knoles (Units 69-71), and Superstition Homes (Units 72-76), under contracts for sale.
A unit is defined in Section 2.23 of the Declaration as follows:
"Unit" shall mean a separate freehold estate designated by a number on the Plat, together with its appurtenant Common Area Interest. A Unit shall include a garage as set forth on the Plat and the Unit shall consist of an airspace defined as follows:
a. The lower boundary is a horizontal plane (or planes) the elevation of which coincides with the top surfaces of the unfinished floors.
b. The upper boundary is a plane (or planes) the positions of which coincides with the bottom surface of the unfinished ceilings.
c. The lateral boundaries are the vertical planes coincidental with the interior *218 unfinished surfaces of the unit's common walls, doors and windows.
d. Each Unit includes the surfaces so described, and the portions of the building and improvements lying within said boundaries, including paint, wallpaper and the like, carpeting and other floor covering. Each such Unit shall also include ownership in the interior partitions, ranges, dishwashers, garbage disposal units, water heaters, and other household appliances lying within said boundaries and/or appurtenant areas.
e. Additionally, each Unit shall include the exterior doors and windows and the frames thereof.
According to the Condominium Documents, each unit owner owns an individual unit plus an undivided one-seventy-sixth fractional interest in the Common Area. Section 1.8, Declaration. The Common Area Interest is appurtenant to each unit and cannot be severed from the unit. Id. The Common Area is defined as "the description of the Condominium Property including improvements, less the description of all Units...." Section 2.9, Declaration. Improvements are defined as "all physical structures and utility delivery systems...."[3] Section 2.14, Declaration.
Sections 4.1 and 4.2 of the Declaration provide for the formation of an association prior to the conveyance of the first unit to serve as the governing body for all owners and unit occupants, to provide maintenance and repair, control and management of the Common Area and to set and collect annual and special assessments from the unit owners. Each unit owner, including Declarant, is deemed a member of the Association. Section 4.6, Declaration. In addition, each unit owner, "by acceptance of a deed to any Unit," covenants and agrees to pay assessments to the Association. Section 6.1, Declaration. Section 6.2 mandates that the assessments be used "to promote the recreation, health, safety, and welfare of the members and their guests, for the improvement and maintenance of the Common Areas...." Although the Association is the governing body for all unit owners, its stated obligations do not relieve unit owners from their responsibilities under the Arizona Horizontal Property Regime Act and the Condominium Documents. Section 4.2, Declaration.
The Association brought this action to collect assessments from Scott, Knoles, Superstition and Inca (defendants). Defendants argued they are not responsible for assessments on land where construction of improvements has not occurred. The Association contended that as owners of each unit, which includes an undivided interest in the Common Area, they are responsible for assessments for its maintenance and repair.
On cross-motions for summary judgment, the trial court granted defendants' motion, ruling as follows:
The Court believes that the written declarations control. Those declarations define "unit;" and, accordingly, an owner's obligation to pay an assessment, in a way which clearly contemplates an erected structure.
As for the Fairway Villas[4] case, the statute defined a condominium as an existing or proposed building, and the statute was deemed to govern. There is nothing in the case suggesting that the declarations said anything different from the statute.
Thus, the Court concludes that the declarations in this matter refer only to completed buildings constructed on the designated area of the condominium plan, and that any party which has not built is not obligated to pay assessments.
The Association appeals from the court's judgment, including its award of attorneys' fees.
*219 OBLIGATIONS OF UNIT OWNERS
"[T]he rights and obligations of condominium owners with regard to the common elements may be found in three sources  the statute, the declaration, and the bylaws." American Savings Service Corp. v. Selby, 149 Ariz. 348, 355-356, 718 P.2d 1001, 1008-1009 (App. 1985). These must be read together, in relation to each other, and harmonized, if possible. Sun-Air Estates, Unit 1 v. Manzari, 137 Ariz. 130, 132, 669 P.2d 108, 110 (App. 1983); A.R.S. § 33-1201(B).[5]
The Declaration and Bylaws
In this case, the real property was submitted to a horizontal property regime pursuant to former A.R.S. §§ 33-551 to 561. In Arizona, condominium ownership consists of individual ownership of a horizontal layer of cubic content space, subject to the owner's exclusive control, together with a fractional interest held in common with other unit owners in the common elements. Makeever v. Lyle, 125 Ariz. 384, 386, 609 P.2d 1084, 1086 (App. 1980), citing former § 33-553(3). The common elements include "the land, the foundations, the floors, the exterior walls of each [unit], ceilings and roofs, and in general all that portion of the property other than that which is subject to the exclusive ownership and control of an individual [unit] owner." Id., citing former § 33-551(6).
The Declaration provides the description and means of determining unit ownership, and ownership in the Common Area. The undivided interest in the Common Area owned by defendants is appurtenant to each of the fifty-five units, cannot be severed from the unit, as stated in Section 1.8 of the Declaration, and, consistent with the former statutes, is "vested as ... any separate parcel of real property is or may be under the laws of this state...." Makeever v. Lyle, 125 Ariz. at 386, 609 P.2d at 1086, citing former § 33-557. Owners, as members of the Association, by acceptance of their deed, covenant to pay the periodic assessments to the Association. Section 6.1, Declaration.
There is nothing in the Declaration which distinguishes owners of completed units from those owning uncompleted ones. A "unit" is described in terms of physical boundaries to distinguish between that area which is for the exclusive use of the unit owner and that which is part of the Common Area. Because a condominium owner in Arizona owns only airspace, and not the land upon which the unit rests, the physical boundaries of such exclusive airspace are so defined. The physical description of a unit's boundaries does not contemplate, as defendants argue, the existence of a physical structure before one becomes a "unit" owner obligated to pay assessments.
The Bylaws define an "owner" as one who holds fee simple to any "Unit," including contract purchasers. A "member" is a person holding membership under the Declaration, which in turn defines "member" as a unit owner. Section 4.6, Declaration. Article V of the Articles of Incorporation also defines "member" as a "record owner of a fee or undivided interest in any Lot which is subject by covenants of record to assessment by the Association," and that such membership is appurtenant to ownership of any lot and may not be separated. Therefore, the Condominium Documents are consistent: unit owners including Declarant, as members, are obligated to pay assessments, without any reference to the construction of improvements.
The Uniform Condominium Act
Finally, we consider the provisions of the Arizona Uniform Condominium Act. We disagree with defendants' argument that the Act only applies to condominiums created after January 1, 1986. Section 33-1201(B) provides:
This chapter also applies to condominiums created within this state before the effective date of this chapter to the extent the provisions of this chapter are not in conflict with chapter 4.1 of this title,[1] in effect before the effective date of this chapter, or declarations, bylaws or plats of *220 condominiums adopted pursuant to chapter 4.1 of this title.
[1] Section 33-551 to 33-561 (repealed).
We have already determined that nothing in the Condominium Documents distinguishes between completed and uncompleted units with regard to the obligation to pay assessments. Our review of the Horizontal Property Regime Act, former §§ 33-551 to 33-561, also indicates no distinction. We agree with the defendants that the former statute defines "apartment" similarly to the Declaration's definition of "unit." Section 33-551 defines an apartment as "one or more rooms occupying all of a floor or floors in a building of one or more floors or stories, but not the entire building." It also defines a building as "the principal structure erected or to be erected upon the land described in the declaration provided for in § 33-552 which determine the use to be made of the improved land." (Emphasis added).
The former statute also requires that the Declaration contain a description of the cubic content space of the building and the apartment, of each carport or any other area subject to individual ownership and control, a description of the common elements, and the fractional interest each apartment bears to the entire horizontal property regime. § 33-553. The owner's interest consists of the apartment located in the building and the owner's "fractional or percentage interest ascribed to each apartment by the Declaration." § 3-551(4). When the property is committed to the horizontal property regime, each individual apartment together with the appurtenant interests in the common elements is vested as a separate parcel of real property. § 33-557. The former statute actually anticipates the present situation by the language "erected or to be erected."
In addition, the Uniform Condominium Act, as interpreted by courts in other states where it has been adopted, does not distinguish between completed and uncompleted units in the context of levying assessments for maintenance, repair and administrative expenses attributable to the common elements. Bradley v. Mullenix, 763 S.W.2d 272 (Mo. App. 1988). Interpreting a statute and declaration identical to those in this case, the court in Bradley stated:
Defendant argues that the conclusion of the trial court, that a "unit" is not a "unit" until completed and capable of occupancy, is proper as it would be unreasonable to assess maintenance, repair and administrative expenses against units which were under construction. We reject this conclusion and defendant's reasoning. Whether a building contains one complete and occupied unit and nine incomplete units or vice versa the grass on the lawn grows to the same length, the snow on the sidewalk accumulates to the same depth, the roof and exterior paint deteriorate at the same rate.
* * * * * *
Moreover, the trial court's definition of "unit" as limited to those completed and capable of occupancy materially deviates from the definition contained in the statute and in the Declaration of Condominium. Both define "unit" as meaning a part of the property designed and intended for independent use and having lawful access to a public way. Both refer to the designation of units on a plat required to be recorded simultaneously with the Declaration. Both assign ownership interest in the common elements and proportionate share of common element expense on the basis of the percentage of each unit to the total units listed in the Declaration. Neither the statute nor the Condominium Declaration makes any distinction between completed and unfinished units.
763 S.W.2d at 275-276.
Similarly, there is nothing in the Arizona Uniform Condominium Act or the Declaration which makes any such distinction. Assessments are assessed against units, similar to the Declaration, according to the percentage of interest in the common elements. § 33-1255(B). A unit is "a portion of the condominium designed for separate ownership or occupancy," § 33-1202(22), and a unit owner is a "declarant or other person who owns a unit." § 33-1202(23). Under the Act, declarant pays all common expenses until the date assessments are imposed. § 33-1255(A). The Declaration provides that assessments *221 "as to all Units (including Units owned by Declarant)" commence "on the first day of the month following conveyance of the first Unit to an Owner." Section 6.7, Declaration.
However, the Act allows for a reduction in a declarant's assessment obligation, if the declaration so provides, "for any unit on which construction has not been substantially completed," to an amount "not less than twenty-five per cent of the common expenses assessment for units which have been substantially completed." § 33-1255(F). Therefore, under the Act, absent an amendment to the Declaration, the defendants are obligated to pay the full amount of the assessments.[6]
It seems obvious that the defendants' ownership interests must necessarily include not only the benefits but also the obligations of the previous owner. One of the obligations conveyed with unit ownership is the continuing obligation to pay assessments. The declarant initially arranges for the payment of assessments until conveyance of the first unit to an owner. Then the Association, standing in the shoes of the declarant, takes over. The obligation to pay assessments is continuing, therefore, without interruption.
In addition, the defendants' ownership interests cannot logically be defined as other than unit owners, by the unambiguous terms of the Condominium Documents. As such, they are deemed members of the Association obligated, as are all other members, to pay the assessments. To define their interests in any other manner brings about an absurd result: they become owners and members of the Association with all the benefits of membership and none of the obligations. The Condominium Documents and relevant statutes, when read in harmony, dictate otherwise.
The trial court's summary judgment in favor of the defendants is reversed, including the award of attorney's fees, and remanded for entry of judgment in favor of the Association and for a determination of the amount of assessments owed by each defendant. The Association is awarded its attorneys' fees incurred on appeal, upon compliance with Ariz.R.Civ.App.P. 21(c), 17B A.R.S.
LIVERMORE, P.J., and FERNANDEZ, J., concur.
NOTES
[1] Repealed by Laws 1985, Ch. 192, § 1, effective January 1, 1986.
[2] Section 2.11 of the Declaration states: "`Declarant' shall mean and refer to LAWYERS TITLE OF ARIZONA, an Arizona corporation, as Trustee under Trust No. 7518-T, its nominees, successors and assigns, while it holds title to any Unit either as the original owner or as Owner upon reacquiring the Property."
[3] The physical structures and utility delivery systems include but are not limited to "the Buildings, private drives, parking areas, gas lines, water pipes, electrical wires, sewer lines, fences, walls, swimming pool and spa and all landscaping located upon the Property (except landscaping located within enclosed patio areas)." Section 2.14, Declaration.
[4] Fairway Villas Venture v. Fairway Villas Condominium Association, 815 S.W.2d 912 (Tex. App. 1991).
[5] The Arizona Uniform Condominium Act, A.R.S. §§ 33-1201 to 1270, added by Laws 1985, Ch. 192, § 3, effective January 1, 1986.
[6] We note that the court's analysis in Fairway Villas, supra, supports our decision. In Fairway Villas, the court construed a statute requiring an "apartment owner" to pay certain assessments to include those who owned both existing and proposed buildings. Similar to the Arizona Horizontal Property Regime Act, the statute defined an apartment as an enclosed space consisting of one or more rooms in a building, which in turn includes both existing and proposed structures. Therefore, the developer, who owned several "building sites," was considered to be an "apartment owner" obligated to pay assessments. In this case, by the clear terms of the Declaration, the defendants are "unit owners," therefore members of the Association, and as owners, have agreed to pay the assessments.