## CENTENNIAL STATION CONDOMINIUM ASSOCIATION, Appellant,

v.

## SCHAEFER COMPANY BUILDERS, INC.

### Centennial Station Condominium Association,

v.

### Schaefer Company Builders, Inc., Appellant.

Commonwealth Court of Pennsylvania.

Argued March 12, 2002.
Decided June 11, 2002.

William J. Benz, Southampton, for appellee.

BEFORE: SMITH–RIBNER, Judge, and FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

In these cross-appeals Centennial Station Condominium Association (Association) and Schaefer Company Builders, Inc. (Schaefer) appeal from an order of the Court of Common Pleas of Bucks County that disposed of three consolidated actions brought by the Association against Schaefer arising out of the construction and operation of an "over 55" condominium community known as Centennial Station in Warminster, Pennsylvania. The Association questions whether the trial court had equitable power to reduce condominium fees and interest payable by the developer for the units that it owns; whether the court could award damages for only some items, when it found that Schaefer had a duty to provide promised amenities; and whether the Association was entitled to reimbursement of all of its legal expenses. Schaefer questions whether the Uniform Condominium Act (Act), 68 Pa.C.S. §§ 3101–3414, prohibits piecemeal declaration of incomplete units within a building; whether Schaefer is liable for any percentage of condominium fees on unbuilt and non-existent units; and whether the Association's estimates of the cost to complete certain items should have been admitted over Schaefer's hearsay and lack of authentication objections.

I

Hal A. Barrow, Warminster, for appellant.

Schaefer filed a declaration of condominium in 1991 for a "flexible condominium"

as defined in Section 3103 of the Act, *as amended*, 68 Pa.C.S. § 3103. Between 1991 and 1996 Schaefer recorded ten amendments to the declaration, which added nine buildings. Each amendment declared the entire building and all units in it. Beginning with the eleventh amendment, relating to Building No. 6, Schaefer declared the ground on which the building sits and identified the shell as a common element, but it identified as units only those that were ready for settlement; it labeled the remainder as "additional real estate" to be declared by amendment at a later time. Schaefer did not pay condominium fees for the areas not identified as units. On September 8, 1998, Schaefer recorded the twenty-second and last amendment before the expiration of the statutory period of seven years for doing so, which declared the remaining real estate and identified the balance of the units. However, Schaefer stopped paying condominium fees.

Another source of dispute between Schaefer and residents concerned the clubhouse and other promised amenities. Schaefer marketed Centennial Station as a luxury community that was to include an Activities Center in Building 12. Advertising in 1991 stated that the clubhouse would open in 1992. It was to include a grand ballroom, a fully equipped fitness center and an arts and crafts room. There were to be tennis courts, an aquatic center and various other physical fitness facilities. By the time of trial in March 2001 various aspects of the Activities Center were not complete or had been completed by the Association.

The Association filed actions in 1997 and 1998 seeking to collect the condominium fees that were assessed against the units owned by Schaefer and a third action seeking equitable and/or legal relief for Schaefer's failure to complete the clubhouse and other amenities. Following a bench trial, the trial court issued an order on April 20, 2001, finding in favor of the Association and awarding damages and injunctive relief. Citing Section 3211(a) of the Act, 68 Pa.C.S. § 3211(a), the court agreed that condominium units were created as soon as the building was declared and held that Schaefer's piecemeal declaration of units was a distortion of the Act and was an overt attempt to avoid paying condominium fees. The court, however, ordered that Schaefer be assessed 67 percent of the fees due, stating that it exercised equitable powers to bring a workable result to a situation the parties could not resolve, without jeopardizing the completion of the project.

▆▆▆ The trial court concluded that Schaefer was the owner of the units created by the last amendment to the declaration and was liable for the payment of condominium fees. The court stated that, although Schaefer benefited from general maintenance, landscaping and upkeep, its ownership of non-existent units was unique and therefore Schaefer should pay 50 percent of the assessed fees on units declared by the last amendment. In regard to amenities, the court stated that it again invoked its equitable powers and decided to honor some but not all claims for reimbursement, for specified items totaling $218,058.04. The court ordered Schaefer to pay a $10,000 attorney's fee. Both parties sought post-trial relief, and the original order was modified by orders of May 31, 2001 and June 6, 2001.[1]

---

1. When reviewing the decision of a trial court in a non-jury trial, the appellate court must determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed an error of law; additionally, findings of a trial judge in a non-jury trial must be given the same weight and effect as the verdict of a

## II

As Schaefer points out, logically this Court must decide Schaefer's challenges at No. 2601 C.D.2001 to the trial court's rulings as to liability before addressing the Association's challenge to the remedy. On the issue of piecemeal declarations, Schaefer first notes that Section 3103 of the Act defines "Real estate" to include "structures, fixtures and other improvements and interests" and also "spaces that may be filled with air or water." It also quotes from Section 3211(a):

To convert convertible real estate or add additional real estate pursuant to an option reserved under section 3206(1) (relating to contents of declaration; flexible condominiums), the declarant shall prepare, execute and record an amendment to the declaration (section 3219) and comply with section 3210 (relating to plats and plans). The declarant is the unit owner of any units thereby created. The amendment to the declaration must assign an identifying number to each unit formed in the convertible or additional real estate and reallocate common element interests, votes in the association and common expense liabilities.

Schaefer asserts that Section 3211(a) authorizes adding "spaces that may be filled with air" as well as certain units. It argues that it is significant that the expansion rule is worded in terms of "units" and not buildings. The Association responds in a reply brief at No. 1795 C.D.2001 that the trial court correctly determined that Schaefer's approach was a distortion of the Act and a ploy to evade paying fees. It points out that the Act created the possibility of flexibility for developers, but the Act does not authorize reservation of "additional real estate" within a building that sits on land that is part of the condominium.

The Court agrees that Schaefer's approach in regard to the first nine buildings of declaring the entire building at one time, along with all of its units, was the correct one under the Act. The Court notes that Section 3211(a) of the Act requires compliance with Section 3210, *as amended*, 68 Pa.C.S. § 3210, in regard to filing of plats and plans when additional real estate is added.[2] Section 3210(b), relating to contents of plat, requires, among other items, the intended location and dimensions of any contemplated improvement to be constructed anywhere in the condominium, the location and dimensions of any vertical and horizontal unit boundaries not shown or projected on plans recorded pursuant to Section 3210(c). Section 3210(c), relating to contents of plan, requires a plan of every building that contains or comprises all or part of any unit, which must show the location and dimensions of the vertical boundaries of each unit and the unit's identifying number, any horizontal unit boundaries, and any units that may be converted by the declarant to create additional units or common elements under Section 3215(c), *as amended*, 68 Pa.C.S. § 3215(c). These provisions do not contemplate empty areas as additional real estate within a building intended to be filled with units.

Schaefer also challenges the ruling that it was responsible for payment of fees for units that were declared but non-existent,

---

jury, and they will not be disturbed on appeal absent error of law or abuse of discretion. *Stonehedge Square Limited Partnership v. Movie Merchants, Inc.,* 454 Pa.Super. 468, 685 A.2d 1019 (1996).

2. The additional space could not be regarded as "convertible real estate" because by definition that is "not within a building containing a unit...." *See* Section 3103 of the Act.

citing *Mayflower Square Condominium Ass'n v. KMALM, Inc.*, 724 A.2d 389 (Pa. Cmwlth.1999). There a party purchased real estate that had been added to a flexible condominium, on which townhouse units were to be constructed, which units included the exclusive right to use certain existing garage parking spaces. The association sought to recover assessments and fees for the parking spaces, and the purchaser resisted, asserting that it did not own any units. This Court affirmed summary judgment for the association, noting that Section 3211(a) of the Act provides that the declarant is the owner of units created by the addition of additional real estate, and it had been added by corrective amendments, with plats and plans identifying the units and assigned parking spaces. Schaefer argues that *Mayflower Square* decided only responsibilities in regard to existing parking spaces: it did not decide the issue of assessments on units not yet built. It asserts that it is not logical to require owners of unbuilt units to pay expenses from which they derive no benefit.

The Association responds that *Mayflower Square* holds that, by virtue of the amended declarations, the unbuilt townhouses were indeed part of the condominium. It also cites *Mountain View Condominiums Homeowners Ass'n, Inc. v. Scott*, 180 Ariz. 216, 883 P.2d 453 (Ct.App.1994), holding that the Uniform Condominium Act does not distinguish between completed and uncompleted units in the context of levying assessments for maintenance, repair and administration of common elements, and *Pilgrim Place Condominium Ass'n v. KRE Properties, Inc.*, 666 A.2d 500 (Me.1995), holding that no provision of the act requires a distinction between built and unbuilt units in the assessment for common expenses. Uniform statutes are to be interpreted and construed to effect their general purpose to make uniform the laws of the states that enact them, Section 1927 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1927, and the Court agrees that applicable cases reject the position advanced by Schaefer and support the trial court's ruling.

### III

■ The Association contends at No. 1795 C.D.2001 that Schaefer's responsibility for condominium fees is created by the declaration and the Act, and the Association's actions to collect those fees were actions at law. The Association notes that even when sitting in equity, a court when dealing with legal rights must follow the rules of law, and it may not substitute its own equitable considerations to deprive a party of its rights at law. *Bauer v. P.A. Cutri Co.*, 434 Pa. 305, 253 A.2d 252 (1969) (equitable defenses did not apply to legal claim for payment of $5,000, even though it was properly filed with equitable action seeking to nullify a covenant not to compete). Moreover, nothing supports the reduced percentages that the trial court selected. The court in essence rewrote the declaration and overrode the assessments levied under it. Schaefer asserts that the Association's argument ignores the fact that Schaefer filed a counterclaim based upon unjust enrichment, asserting that the Association improperly sought to collect fees on units for which it had no budgeted expenses. It notes that Martin Schaefer testified that "cash flow" was one of the causes of construction delays, and the court could consider the parties' financial condition when deciding on an equitable remedy.

The Court notes, however, that the trial court did not accept Schaefer's theory of unjust enrichment. To the contrary, the court concluded that Schaefer's contentions were based upon a "distortion" of the

Act, and it found that Schaefer was simply attempting to avoid paying condominium fees that it owed. The court rejected Schaefer's unfounded arguments that it owed nothing in regard to units declared under the last amendment. In regard to the Association's claims for fees under the Act and terms of the declaration, the court lacked authority to engage in equitable adjustments to Schaefer's legal obligations. *Bauer.* Therefore, the Court reverses the trial court to the extent that it directed payment of condominium fees other than as specified in the declaration and remands for correction.

## IV

■ The Association also challenges the trial court's order on amenities. The Association offered proof of actual or estimated costs of the amenities totaling $361,931. The trial court concluded that it should honor the Association's claim for reimbursement where Schaefer had not supplied basic items more than ten years after the start of the project. The court ordered Schaefer to pay specified amounts for the ballroom, bathroom and lockers, billiard room, club room, fitness room, indoor aquatic center and outside items totaling approximately $218,000, and it directed Schaefer to complete the tennis courts and fence at its expense by August 1, 2001. The court employed its equitable powers to honor some but not all of the claims. Without further explanation, the court omitted claims for the arts and crafts room, library, hallway furnishings and some office equipment and awarded only $7,100 of $110,950 claimed in regard to the tennis court and fence.

Schaefer contends that the trial court erred in admitting over Schaefer's objection the Association's Exhibit P–24, which was an eighty-nine page packet of documents containing numerous quotes, esti-

mates and reports from various contractors in the fields of heating, ventilation and air-conditioning, security alarm systems, plumbing, painting and more. Schaefer objected to the exhibit, stating that it contained many hearsay documents that had never been authenticated. The court referred to testimony of the Association's architect witness, who stated that he reviewed the estimates and found them to be reasonable, and the court overruled the objection. The court cited *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 464 A.2d 1243 (1983), for the proposition that the duty to find damages lies with the fact finder and should not be interfered with unless it clearly appears that the award resulted from partiality caprice, prejudice, corruption or other improper influence. The court stated that Schaefer disputed only whether the items were necessary and that it reviewed the evidence and awarded only amounts that were Schaefer's responsibility.

Schaefer argues that the hearsay estimates did not fall within the business records exception to the hearsay rule, citing *In re Gillen,* 236 Pa.Super. 521, 344 A.2d 706 (1975) (holding that estimates of costs to repair damaged automobiles, not authenticated by the authors or identified by those who requested them did not fall within business records exception), or any other exception under Pa. R.E. 803. The Association notes that its witness stated that Ex. P–24 was a book consisting of estimates of things that had to be done to complete the amenities, including some items for which the Association had already paid. The Court notes if particular items were shown to be among those required to be provided in accordance with Schaefer's undertakings, no basis would exist for not awarding damages to the Association for Schaefer's failure to provide them. However, under *In re Gillen*

and under Pa. R.E. 803(6), relating to hearsay exception for records of regularly recorded activity, the Court concludes that the offering of plainly hearsay estimates (as opposed to proof of payments already made), with no testimony from the sources of the estimates as to the manner and regularity of their preparation was not sufficient.[3]

In this case neither the sponsoring witness nor the Association's expert who opined that the estimates were reasonable was qualified to speak on behalf of the businesses regarding their business practices. Accordingly, the Court vacates the trial court's order relating to damages and remands for further proceedings consistent with this opinion. On remand the trial court shall award damages for each item that is determined to be among the amenities that Schaefer is obligated to provide, if the Association provides necessary authentication of its evidence.

## V

Finally, the Association challenges the trial court's award of a flat $10,000 attorney's fee. Section 3315(a) of the Act, *as amended,* 68 Pa.C.S. § 3315(a), provides that, unless the declaration provides otherwise, reasonable costs of the association, including legal fees incurred in connection with sums due, are enforceable as an assessment against a unit owner. Also, Section 3315(f) specifies: "A judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party." Section 14.6 of the declaration provides that a delinquent owner shall be obligated to pay all expenses including reasonable attorney's fees incurred in the collection of a delinquent assessment. Schaefer asserts that there is no evidence on the record that fees were assessed against it under Section 3315. The Court agrees that under Section 3315 of the Act and the declaration, the Association is entitled to recover its full reasonable attorney's fee and costs and that the trial court erred by arbitrarily choosing a figure unrelated to the actual expenses involved. On remand the court shall receive evidence as to attorney's fees that the Association actually incurred.

### ORDER

AND NOW, this 11th day of June, 2002, the order of the Court of Common Pleas of Bucks County is reversed insofar as the order approved the assessment of condominium fees against Schaefer Company Builders, Inc. at less than the amounts provided for in the Uniform Condominium Act and the declaration of condominium for Centennial Station, and this matter is remanded for a determination of the full amounts due. The trial court's order is vacated insofar as it ordered payment for the completion of specified amenities, and the issue of such payments is remanded for a new determination in accordance with the foregoing opinion. The trial court's assessment of attorney's fees and costs is vacated and remanded for a new determination of fees and costs based upon evidence to be submitted of record. Jurisdiction is relinquished.

---

**3.** Rule 803(6) renders admissible a memorandum, report and so forth of acts, events or conditions made at or near the time made by or based upon information from a person with knowledge if kept in the course of regularly conducted business activity, and pursuant to the regular practice of the business, "all as shown by the testimony of the custodian or other qualified witness unless the sources of information or other circumstances indicate lack of trustworthiness."