

# Missouri Court of Appeals

## Southern District

### Division One

THE WILLOWS CONDOMINIUM
OWNERS ASSOCIATION, INC.,

     Plaintiff-Respondent,

v.

MICHAEL KRAUS, ROSEMARY
LANZONE, SHERYL FIALA, THOMAS
LONG, DENNIS BATTERAM, NATHAN
SUTTON AND SHANNON SUTTON,
PAUL ROBERTS AND MOONBOW
PROPERTIES, LLC,

     Defendants-Appellants,

and

STANLEY WOLINSKI AND
JEAN WOLINSKI, DARREN LOWDER
AND BRENDA LOWDER,

     Defendants.

No. SD33447
Filed: 3-23-15

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable G. Stanley Moore, Circuit Judge

**AFFIRMED**

The Willows Condominium Owners Association, Inc. (the Association) filed the

underlying action to obtain declaratory relief concerning the proper distribution of

surplus insurance proceeds that remained after the reconstruction of Building 158, which had been totally destroyed by fire. The defendants in the action were the nine unit owners of Building 158, who wanted the surplus insurance proceeds distributed to them. The Association took the position that the surplus insurance funds should be distributed to all 58 unit owners at The Willows on the Lake (the Willows). Seven of the nine defendants (hereinafter referred to as Counterclaimants) filed a counterclaim against the Association seeking, *inter alia*, declaratory relief, and damages for breach of trust, breach of fiduciary duty and breach of contract concerning Association dues.[1] The Association and Counterclaimants filed cross-motions for summary judgment.

The material facts are not in dispute. The governing document used by the Association is the "Condominium Declaration for The Willows on the Lake, a Condominium" (Declaration), which was recorded on July 21, 1983. As required by the Declaration, the Association purchased and maintained property insurance to cover the replacement of all the structures on the property. In May 2011, a fire destroyed all nine units in Building 158.[2] The Association received $1,154,300 as insurance proceeds for the destruction of Building 158. After reconstruction was completed, approximately $550,000 of the insurance proceeds remained. During the nearly year-long rebuilding process, the Association assessed quarterly dues to be paid by all unit owners, including

---

[1] The parties who filed counterclaims were Michael Krause, Rosemary Lanzone, Sheryl Fiala, Thomas Long, Dennis Batteram, Nathan Sutton and Shannon Sutton, Paul Roberts and Moonbow Properties, LLC. Defendants Stanley and Jean Wolinski, and Darren and Brenda Lowder are the owners of the remaining two units in Building 158. They were defendants in the underlying proceedings, but they did not file a counterclaim. They also have not appealed from the underlying judgment.

[2] Building 158 was the only building damaged by the 2011 fire. The owners of the 49 units in the undamaged buildings were not named as parties in the declaratory judgment action.

2

the nine unit owners of Building 158. Counterclaimants paid those assessments. The trial court granted the Association's summary judgment motion and denied Counterclaimants' cross-motion. In granting summary judgment in favor of the Association, the trial court concluded that certain provisions in the Declaration were determinative of the issues. The judgment distributed the surplus insurance proceeds to all 58 unit owners and denied relief on all counts of the counterclaim.

Counterclaimants appealed and present three points for decision. Point I contends the trial court erred by distributing the surplus insurance proceeds to all 58 unit owners because that ruling is contrary to the Declaration and Missouri's Uniform Condominium Act (UCA).[3] Point II contends the trial court erred by denying relief on Counterclaimants' breach of trust and fiduciary duty theories because the Association breached both of those duties when it failed to distribute the surplus funds solely to Building 158 unit owners. Point III contends the trial court erred by denying relief on Counterclaimants' breach of contract claim because the Association improperly assessed quarterly dues against Building 158 unit owners after their building burned.

The material facts are undisputed, and only issues of law are presented for our *de novo* review. *See Nevils v. Group Health Plan, Inc.*, 418 S.W.3d 451, 453 (Mo. banc 2014). We find no merit in Counterclaimants' points and affirm the judgment. Additional facts necessary to the disposition of the case are included below as we address Counterclaimants' three points on appeal.

---

[3] The UCA, §§ 448.1-101 to .4-120, was enacted in 1983 and applies to all condominiums created in Missouri after September 28, 1983. *See* § 448.1-102.1; *Epstein v. Villa Dorado Condominium Ass'n, Inc.*, 371 S.W.3d 23, 27 (Mo. App. 2012).

Counterclaimants contend the trial court erred by distributing the surplus funds to all 58 unit owners because that ruling does not comply with sections 26(f) and (h) in the Declaration. In determining the meaning of those provisions, we consider the document as a whole and give the words their natural and ordinary meaning. ***Clampit v. Cambridge Phase II Corp.***, 884 S.W.2d 340, 345 (Mo. App. 1994). We will find ambiguity in these provisions only if the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in the construction of the terms. ***Id***.

Section 1(bb) of the Declaration defines a "Unit Owner" as a "person or persons whose estate or interests individually or collectively aggregate fee simple absolute ownership of a Unit or Units[.]" Section 26(a) of the Declaration requires the Association to purchase and maintain property insurance on all structures on the property. Section 21 of the Declaration makes these insurance premiums common expenses that are borne by all Unit Owners. Section 26(f) of the Declaration states:

> (f) Any loss covered by the insurance described in subparagraph (a) hereinabove shall be adjusted with the Association, and insurance proceeds for that loss shall be payable to the Association (as trustee for Unit Owners and lienholders as their interests may appear), and not directly to any mortgagee or beneficiary under any deed of trust. Subject to the provisions of subparagraphs (h) and (i) hereinbelow, the proceeds shall be disbursed first for the repair or restoration of the damaged property, and Unit Owners and lienholders are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the property has been completely repaired or restored, or the Condominium is terminated.

Counterclaimants argue that "Unit Owners" means only the owners of units in Building 158. Reading section 26(f) together with section 26(h), as we must, we disagree with that assertion. The latter subsection states:

4

> (h) Any portion of the Condominium for which insurance is required under this section which is damaged or destroyed shall be repaired or replaced promptly by the Association unless (i) the Condominium is terminated, or (ii) repair or replacement would be illegal under any state or local health or safety statute or ordinance, or (iii) eighty percent (80%) of the Unit Owners vote not to rebuild, which 80% must include the unanimous agreement of each Owner of a Unit or assigned Limited Common Element which will not be rebuilt. The cost of repair or replacement in excess of insurance proceeds and reserves is a Common Expense ….

Section 26(h).[4] Based upon the plain language of this section, all of the Unit Owners would have to bear the shortfall as a common expense (either by resort to the reserves or an additional assessment) if Building 158 could not be fully reconstructed using only the insurance proceeds. Given the clear intent expressed in this section for all Unit Owners to share the burden when the insurance proceeds are insufficient, we conclude that "Unit Owners" in section 26(f) similarly refers to all of the Unit Owners when there are surplus funds to be distributed.

Counterclaimants suggest this construction conflicts with a later portion of section 26(h), which deals with the disbursement of insurance proceeds if no rebuilding occurs:

> (h) …. If the entire Condominium is not repaired or replaced: (i) the insurance proceeds attributable to the damaged Common Elements shall be used to restore the damaged area to a condition compatible with the remainder of the Condominium, (ii) the insurance proceeds attributable to Units and Limited Common Elements which are not rebuilt shall be distributed to the Owners of those Units and to the Owners of the Units to which those Limited Common Elements were allocated, (iii) and the remainder of the proceeds shall be distributed to all the Unit Owners or lienholders, as their interests may appear, in proportion to the Common Element interests of all Units.

Based upon the foregoing language, Counterclaimants argue that the insurance proceeds would have been distributed solely to the nine unit owners in Building 158 if it had not

---

[4] None of the conditions in subsections (i)-(iii) apply in this case.

been rebuilt. Therefore, they assert that the phrase "Unit Owners" in section 26(f) also must refer only the nine unit owners in Building 158. We are not persuaded by that argument.

First, this later provision does not apply because Building 158 was completely reconstructed using insurance proceeds that were funded by all of the Unit Owners. After reconstruction, Counterclaimants' interest in the condominium was fully restored. To construe section 26(f) as they suggest would provide them with a windfall. Moreover, if the insurance proceeds had been insufficient for reconstruction, the plain language of section 26(h) requires all Unit Owners to share that shortfall. Counterclaimants' interpretation would favor them if there is a surplus, and burden all other Unit Owners if there is a shortfall. Our harmonious construction of sections 26(f) and (h), on the other hand, avoids that inequitable result.

Second, if Building 158 had not been reconstructed, we do not interpret the later provision in section 26(h) to require that all of the insurance proceeds be given to Counterclaimants, as they contend. Based upon the plain language of subsection (i), the insurance proceeds would have to be used to repair damaged common elements before Counterclaimants would have received anything. Next, the plain language of subsection (ii) states that "the insurance proceeds attributable to Units and Limited Common Elements which are not rebuilt *shall be distributed to the Owners of those Units and to the Owners of the Units to which those Limited Common Elements were allocated ….*" (Italics added.) It is important to note that, if no rebuilding occurred, Counterclaimants' interest in the condominium would have been extinguished. Subsection (ii) provides a mechanism for compensating the affected unit owners by giving them the insurance proceeds attributable to the units which are not rebuilt. The language of this subsection

6

explicitly states that such proceeds shall be distributed to the owners of those units. If the phrase "Unit Owners" in section 26(f) already referred only to the owners of damaged units, then this additional limiting language added to subsection (ii) would be meaningless.[5] Finally, once the allocation process is completed, subsection (iii) states that any surplus funds would be distributed to all the Unit Owners or lienholders. Accordingly, we disagree with Counterclaimants' proposed construction of sections 26(f) and (h).[6]

For all of the foregoing reasons, the trial court did not err in distributing the surplus insurance proceeds to all Unit Owners. Point I is denied.

*Point II*

Counterclaimants contend the trial court erred by denying relief on Count II (breach of trust) and Count III (breach of fiduciary duty) of their counterclaim. This point assumes the trial court erred in distributing the surplus insurance proceeds to all Unit Owners. Because this assumption is wrong, Point II is denied.

*Point III*

Counterclaimants contend the trial court erred in granting summary judgment on Counterclaimants' breach of contract theory because that ruling is contrary to section 3 of the Declaration. Their argument is based on the following facts.

---

[5] The absence of such limiting language in section 26(f) suggests the omission was intentional and supports our construction of the phrase "Unit Owners" there to mean all Unit Owners.

[6] Counterclaimants also present a statutory argument based upon UCA § 448.3-113.5 and § 448.3-113.8. Because the Willows was created in July 1983, however, the UCA does not apply. *See* § 448.1-102.1 (providing that the UCA applies to "condominiums created within this state after September 28, 1983").

Counterclaimants sought to recover their quarterly assessment for Association dues in the second, third, and fourth quarters of 2011 and first quarter of 2012 when their individual units were in the process of being rebuilt. Counterclaimants claim they did not owe the assessment based upon the language of the assessment formula in section 3:

> [T]he percentage figure represented by a fraction whose numerator is the area of such Unit (in square feet) and whose denominator is the area (in square feet) of all Units in the Condominium *at any given time*.

Section 3 (emphasis added).[7] "Unit" is defined by the Declaration as "a physical portion of the Property including one or more rooms occupying one or more floors, or a part or parts thereof, and designed and designated for separate ownership or occupancy as a residential apartment for one family, and having lawful access to a public way[.]" *See* § 448.010(10) (defining a condominium "unit" in nearly identical terms).[8] Counterclaimants argue that the assessment formula's language "at any given time" means the Declaration only allows for assessment of dues "based on the square footage of the units presently existing at each time of assessment." They argue that their units had zero square footage while being rebuilt, which should result in zero assessment. Counterclaimants' argument assumes their units must be complete and capable of

---

[7] Section 3 of the Declaration is entitled "DIVISION OF PROPERTY AND ALLOCATION OF INTERESTS" and first addresses how the property is divided:

> The real property described in Exhibit A and the improvements thereon are hereby divided into fee simple estates, each such estate consisting of separately designated Unit, with the Limited Common Elements reserved to the use of such Unit as designated on the Plat and set forth on "Exhibit C", attached hereto and made part hereof by this reference, and the undivided percentage or fractional interest in and to the Common Elements appurtenant to each Unit.

[8] This definition is from Missouri's Condominium Property Act (CPA), §§ 448.005-.210, which does apply in this case. *See **Epstein***, 371 S.W.3d at 27 ("CPA governs condominium associations created prior to 1983").

occupancy for their square footage to be included in the dues assessment formula. We disagree.

A similar argument was rejected in **Bradley v. Mullenix**, 763 S.W.2d 272, 275 (Mo. App. 1988). There, a party argued that "a 'unit' is not a 'unit' until competed and capable of occupancy" because "it would be unreasonable to assess maintenance, repair and administrative expenses against units which were under construction." **Id**. at 275. In rejecting this argument, the eastern district of this Court explained:

> Whether a building contains one complete and occupied unit and nine incomplete units or vice versa the grass on the lawn grows to the same length, the snow on the sidewalk accumulates to the same depth, the roof and exterior paint deteriorate at the same rate.

**Id**. at 275-76. The Court also noted the argument is contrary to the definition of "unit," as defined "in the statute [§ 448.010(10)] and the Declaration of Condominium":

> Both define "unit" as meaning a part of the property designed and intended for independent use and having lawful access to a public way. Both refer to the designation of units on a plat required to be recorded simultaneously with the Declaration. Both assign ownership interest in the common elements and proportionate share of common element expense on the basis of the percentage of each unit to the total units listed in the Declaration. Neither the statute nor the Condominium Declaration makes any distinction between completed and unfinished units.

**Id**.; *see also* **Mountain View Condominiums Homeowners Ass'n Inc. v. Scott**, 883 P.2d 453, 457 (Az. Ct. App. 1994) (citing **Bradley** and holding that because unit ownership includes a vested, undivided interest in the common elements, the obligation to pay assessment arises from unit ownership and is not dependent upon unit completion).

We reach the same conclusion here. The assessment language upon which Counterclaimants rely, "at any given time," does not require the Association to ensure that Counterclaimants' unit square footage is complete before applying the assessment formula. Further, we note the above assessment language appears after describing the formula's

"denominator," which "is the area (in square feet) of all Units," indicating that it is square footage of *all* units that may change "at any given time," depending on the addition or termination of certain units. The platted square footage of a unit used as the numerator in the assessment formula is known and does not change. Therefore, the trial court did not err in granting summary judgment against Counterclaimants on their breach of contract theory. Point III is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, JR., C.J./P.J. – CONCUR